FREUNDLICH & LITTMAN, LLC
Austin R. Freundlich I.D. #205670
Gregory C. Littman, I.D. # 306806
Megan D. Hazel, I.D. #84047

1425 Walnut Street, Suite 200
Philadelphia, PA 19102
(215) 545-8500                                          *Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SILVER LININGS PSYCH, LLC<br>1601 WALNUT STREET, STE 1128<br>PHILADELPHIA, PA 19102,<br>　　　　　　Plaintiff<br><br>　　v.<br><br>COLLEEN M. KELLER<br>22 STROWBRIDGE STREET<br>TRUMANSBURG, NY 14886-9173<br><br>COLLEEN M. KELLER<br>P.O. BOX 524<br>TRUMANSBURG, NY 14886-0524<br><br>CHOOSING YOURSELF COUNSELING, LLC<br>744 S. MEADOW STREET<br>SUITE 450<br>ITHACA, NY 14850-5380<br><br>CHOOSING YOURSELF COUNSELING, LLC<br>22 STROWBRIDGE STREET<br>TRUMANSBURG, NY 14886-9173<br><br>　　　　　　Defendants. | DOCKET NO. |

## CIVIL ACTION - COMPLAINT

AND NOW comes Plaintiff Silver Linings Psych, LLC (hereafter "Plaintiff"), by and

through its attorneys, Freundlich & Littman, LLC, and files this Civil Action Complaint against

Defendants, Colleen Keller (hereafter "Defendant Keller") and Choosing Yourself Counseling, LLC (hereafter "Defendant CYC"), and in support thereof avers as follows:

## INTRODUCTION

1. This is an action for compensatory and punitive damages arising from Defendant Colleen Keller's breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with business contracts/relationships, misappropriation of trade secrets and violation of the Pennsylvania Uniform Trade Secrets Act (PUTSA) and unjust enrichment, in connection with her role as an independent contractor with Plaintiff Silver Linings Psych, LLC.

## PARTIES

2. Plaintiff, Silver Linings Psych, LLC is a domestic limited liability company, registered to do business in the Commonwealth of Pennsylvania at 1601 Walnut Street, Suite 1128, Philadelphia, PA, 19102.

3. Defendant Colleen M. Keller is an individual who, upon information and belief, resides at 22 Strowbridge Street, Trumansburg, New York, 14886.

4. Defendant Choosing Yourself Counseling, LLC, is a foreign domestic limited liability company, with a registered address of 22 Strowbridge Street, Trumansburg, New York, 14886, and with a mailing address of 744 S. Meadow Street, Suite 450, Ithaca, New York, 14850.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6. This Court has supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b), as the events giving rise to the claims herein occurred and/or continue to occur in this District, Defendant Keller resided and worked in this district at the time of the events, and Defendant Keller and Defendant CYC conduct business in this District, as does Plaintiff.

8. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to the terms of the contract that is in breach by Defendant Keller, a true and correct copy of which contract is attached hereto and made part hereof as Exhibit "A".

9. Section 19 of the subject contract, which was agreed to and executed by the parties, states as follows:

> **Governing Law and Venue**. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. In the event of any dispute between the parties regarding the interpretation, application, or performance of this Agreement, the parties agree that any resulting litigation shall be filed in a court of competent jurisdiction located in Philadelphia County, Pennsylvania (see Ex. "A").

and accordingly, in addition to proper venue and jurisdiction pursuant to 28 U.S.C. § 1391(b), jurisdiction exists in the courts of the Commonwealth of Pennsylvania under the subject Agreement as well.

## PERTINENT FACTS

10. On or about July 5, 2022, Plaintiff and Defendant Keller entered into an Independent Contractor – Clinician Contractor Agreement, which agreement is attached hereto and made part hereof as Exhibit "A".

11. The agreement governed the contractual employment relationship between the parties for the provision of professional services in the field of mental health and therapeutic services.

12. Plaintiff is a psychotherapy practice offering various therapeutic services, including but not limited to individual therapy and couples therapy.

13. Defendant Keller resided at 1826 Reed Street, Philadelphia, PA at the time of the execution of the agreement and was licensed in the Commonwealth of Pennsylvania as a Licensed Clinical Social Worker.

14. As set forth in Exhibit "A" hereto, the term of the independent contractor agreement was for a period of three years, commencing on July 5, 2022 and with an end date of July 4, 2025, which term would automatically extend for an additional one-year term should either party fail to terminate the agreement with sixty days' written notice.

15. Section 3.a. of the subject agreement states, in pertinent part, as follows:

> 3.    **Services to be Provided by Contractor**
> a.    Contractor agrees to provide mental health counseling for clients obtained via SLP ("Clients") or therapy performed at SLP's facilities during the Term of this Agreement ***in accordance with the standards, customs, and ethical principles established by the American Counseling Association, and in compliance with all applicable laws and regulations*** … (emphasis added).

16. Section 4.a. of the subject agreement states, in pertinent part, as follows:

> 4.  **Location of Work and Operational Direction**
>
> a.  <u>Location and Facility</u>. All services shall be provided at SLP's business location at 1601 Walnut Street, Suite 1128, Philadelphia, PA 19102, ***or if approved in advance in writing by SLP, by telemedicine*** (emphasis added).

17. Section 14 of the subject agreement, in pertinent part, states as follows:

> **Confidentiality**.  Contractor shall be obligated to preserve and maintain the ***confidentiality of the business affairs and relationships of SLP***. Both during the Term of this Agreement ***and after termination … Confidential***

*Information shall mean*… including but not limited to … *Client lists, prospect names and information*, …Contractor shall be prohibited from retaining any copies, reproductions, or summaries of any and all Confidential Information. *This covenant shall survive expiration of this Agreement* (emphasis added).

18. Section 15 of the subject agreement, wholly pertinent to the claims set forth more fully hereinbelow, states as follows:

**15.Non-Disclosure, Non-Solicitation & Restrictive Covenant.**

a. <u>**Non-Disclosure.**</u> Contractor acknowledges and agrees that the names and contact information (home address, phone number, e-mail address) of SLP's Clients are and will remain the exclusive property of SLP, and that such names and contact information constitute confidential information and are of great economic value to SLP. *During the Term of this Agreement and after its termination*, *Contractor will not,* directly or indirectly, *use,* divulge, or disclose the names and/or *contact information of SLP's clients* to any person or entity engaged in a business that provides services similar to the Services provided by SLP (emphasis added)

b. <u>**Non-Solicitation.**</u> *During the Term of this Agreement, and for a period of one (1) year after its termination, Contractor shall not directly or indirectly, solicit, divert, take away, or provide Services to any of SLP's Clients to whom Contractor provided Services while associated with SLP* (emphasis added).

c. <u>**Restrictive Covenant.**</u> During the Term and for a period of one (1) year after its conclusion, the Contractor agrees to not engage in a similar position or provide comparable services to those provided herein, within three (3) miles of SLP's office without the express written consent of SLP, which shall be at the sole discretion of SLP.

d. <u>**Reasonableness of Non-Solicitation.**</u> *Contractor acknowledges* that she understands the restrictions set forth in this Section 15 *and,* having done so, *agrees that the restrictions are fair and reasonable*, and reasonably required *for the protection of SLP's legitimate competitive business interests.* The provisions of this Section 15 *shall survive the termination of this Agreement* (emphasis added).

19. Section 20 of the subject agreement, in pertinent part, states as follows:

**Records**. All medical and financial *records pertaining to patients* treated by Contractor within the scope of this Agreement, *including but not limited to charts*, medical reports, fees, billings, and payment of fees, and all personnel records of Contractor *shall at all times be the property of SLP* or its designee (emphasis added).

20. Upon executing the agreement in July 2022, Defendant Keller began working as an independent contractor providing therapeutic services to clients at SLP while working part time elsewhere.

21. Plaintiff was founded in 2013 and is owned and run by Dr. Alissa Silverman.

22. Plaintiff is a successful referral-driven practice, which referrals are based predominantly upon the reputation and extensive experience of both the practice and its founder. Attached hereto and made part hereof as Exhibit "B" is a true and correct copy of Alissa Silverman, PsyD's impressive CV.

23. Dr. Silverman built her practice from the ground up, with a wealth of private practice experience, as well as clinical experience in a myriad of organizational settings including academia, institutional, governmental, treatment facilities, and hospitals.

24. Dr. Silverman's vast clinical experience and hospital appointments led her to become a member of the Psychology Hiring Board for the VA Medical Center in 2017.

25. In academia, having lectured, presented, and researched since 1998, Dr. Silverman has been on the faculty at the University of Pennsylvania School of Medicine in Psychiatry since 2009, and continues to serve as a Clinical Assistant Professor of Psychiatry there.

26. In addition to referrals and the reputation and name of Plaintiff, business generated by Plaintiff also comes from sources such as Google Ads, a costly marketing strategy, and/or generated by marketing and advertising in trade publications, through signage paid for by Plaintiff, through associations and memberships maintained and paid for by Plaintiff, and via social media and websites maintained and paid for by Plaintiff, all of which expenses are incurred by Plaintiff.

27. Further, the practice has a Virtual Assistant which enables the therapists to connect quickly with new referrals, thereby turning those prospects into a consult call within 24 hours, which Virtual Assistant helped build the business exponentially.

28. In or about August 2023, Defendant Keller expressed to Dr. Silverman, who is licensed in both New York and Pennsylvania, as well as 42 other states, that she was interested in physically moving to New York.

29. Dr. Silverman offered to, and in fact did, help Defendant Keller with the arduous licensing process, for her to become licensed as a certified social worker in the State of New York.

30. Due to unforeseen personal circumstances, Defendant Keller's plan to move to New York was put on hold, and she continued to work as an independent contractor for Plaintiff in Pennsylvania, while continuing to take steps to obtain her New York license.

31. In April 2024, Defendant Keller obtained her New York license (LCSW), and approximately eight weeks later, in or around July-August 2024, she took a month off from work to begin her move to New York.

32. In or about August 2024, discussions ensued between Dr. Silverman and Defendant Keller regarding Defendant Keller's physical transition to New York, and her potentially seeing Plaintiff's clients there virtually.

33. Less than one month later, on September 11, 2024, Defendant Keller informed Plaintiff Silverman that she planned on leaving the practice in December 2024, in violation of the terms of her contract.

34. After discussion, Defendant Keller begrudgingly agreed to honor her contract until its end date of July 2025. She also at that time informed Plaintiff Silverman that she had recently joined a number of insurance panels.

35. Plaintiff does not, and never has, accepted health insurance for payment of services rendered.

36. During their video call on September 11, 2025, Dr. Silverman had cautioned Defendant Keller about the intricacies and stringent reporting requirements involved when contracting with insurance companies, further informing Defendant Keller that she would need to be very careful in this pursuit as it is heavily audited and there are varying requirements for each different insurer, as well as different regulations for New York and Pennsylvania.

37. On April 18, 2025, Dr. Silverman sent Defendant Keller an email regarding the transition of Plaintiff's current clients seen by Defendant Keller, as her departure date was approaching.

38. The email acknowledged that Defendant Keller had completed all necessary discharge summaries for the clients she was currently seeing, with the exception of five clients. Attached hereto and made part hereof as Exhibit "C" is a true and correct copy of the April 18, 2025 email.

39. Between April 20, 2025, and Defendant Keller's anticipated departure date, no less than five meetings were held between Dr. Silverman and Defendant Keller, most of which ranged from one to two hours in length and involved extensive discharge planning discussion.

40. Also between April 2025 and June 2025, Dr. Silverman discussed with her other 1099 contractors, as well as another provider outside of her practice, the prospect of taking on SLP clients currently seen by Defendant Keller, and a process was implemented by Dr. Silverman to effectuate the transition of those clients to other therapists in the practice.

41. Dr. Silverman was simultaneously engaged in extensive discussion with Defendant Keller over that time period, posing questions and anticipating responses regarding the status of each client, to ensure that all was in order for purposes of compliance, regulation, proper documentation and the clients' best interests.

42. Defendant Keller began expressing frustration at both the questions posed by Dr. Silverman, and the documentation requirements with which she was asked to comply.

43. On June 6, 2025, approximately one month prior to Defendant Keller's departure from the practice, Dr. Silverman sent personal letters on behalf of her company, Plaintiff SLP, to clients currently seen by Defendant Keller.

44. The letters informed her clients of Defendant Keller's departure date, offered to schedule a final session with Defendant Keller, and offered to connect personally with Dr. Silverman if desired in order to appropriately align the client with another therapist. Attached hereto and made part hereof as Exhibit "D" is a true and correct copy of the above-referenced practice letter.

45. The aforementioned letter was created with, discussed with, and approved by Defendant Keller, well prior to her departure.

46. Defendant Keller did not personally bring any clients into the SLP practice during her time of employment.

47. However, Plaintiff graciously agreed that two clients could transfer out of Plaintiff's practice and continue services with Defendant Keller via telehealth/virtually from New York, if those clients so desired.

48. As the transition process developed, Dr. Silverman began to notice that clients either (a) 'fell off', failing to respond to the practice letter altogether, (b) became non-responsive *after* a final session with Defendant Keller, (c) directly expressed in reply to Dr. Silverman that they did not wish to continue services or (d) indicated to Dr. Silverman, or to the proposed therapist who had been assigned the task of reaching out to that client, that they would 'follow up at a later time' (but did not).

49. The documented 'last-session dates' of clients seen by Defendant Keller – regardless of client response – all fell between the months that Defendant Keller first expressed interest in leaving the practice, and the time she left.

50. It is believed, and therefore averred, that when Defendant Keller was asked to honor the terms of her contract and stay until July 2025, she became angry, frustrated and spiteful, and began informing clients prematurely that planned on leaving SLP, but that they could 'come with her' via telehealth when she did so.

51. It is believed, and therefore averred, that over the same course of months that Defendant Keller was *appearing* to 'help transition' with Plaintiffs, she was actually having conversations and written communications with current clients of Plaintiff about them transitioning with her to her new practice.

52. It is believed, and therefore averred, that some of these conversations took place well before the lengthy transition meetings held between Defendant Keller and Dr. Silverman.

53. As her suspicions of Defendant Keller's deceitful behavior developed, Dr. Silverman recalled the conversation she had with her in August-September 2024, wherein Defendant Keller informed Dr. Silverman that she wanted to leave the practice, but *also* informed Plaintiff that she had recently joined a referral services that would help her bill insurance clients.

54.  It is believed, and therefore averred, that Defendant Keller began the process to work with insurance panels *prior* to her move to New York, and while still actively employed as a contractor at SLP, in order to be able to tell current clients of SLP that they could see her "through insurance" (with far less out-of-pocket expense), thereby incentivizing clients to follow her and leave Plaintiff.

55. With this realization, Dr. Silverman was compelled to review the documentation, session notes, discharge summaries, and emails on her company server.

56. The documentation revealed that during the process of 'transitioning out' Defendant Keller's assigned cases to other therapists, in almost all cases, there was no response from the clients assigned to Defendant Keller, or her notes documented that they 'would get in touch later'.

57. Dr. Silverman then, shockingly, discovered the following:

- falsified session notes entered by Defendant Keller, containing notes of conversations and/or documented sessions with the client about that individual's decision to "no longer continue with therapeutic services", which conversations never occurred;

- false discharge summaries entered by Defendant Keller, and sent to Dr. Silverman, that attempts had been made to reach specific clients about continuing

with another therapist at the SLP practice, when in fact no such email existed on Plaintiff's server, and no such attempts had been made;

- oddly worded notes and summaries, with statements or excuses as to Defendant Keller's inability to reach the client, and/or the client's "expressing hesitation to transfer to another therapist" when it is believed, and therefore averred, that no such attempt and/or conversation ever took place with the client.

58. Accordingly, Dr. Silverman sent follow-up inquiries to some of the clients who had not yet responded to the initial practice letter, and/or about whom she was suspicious of Defendant Keller's solicitation.

59. Dr. Silverman received direct email responses from five clients - *the very same five clients for whom Defendant Keller refused to provide discharge summaries* - informing Dr. Silverman that they were "continuing on with Colleen" at her new practice. Attached hereto and made part hereof as Exhibit "E", collectively, are true and correct copies of the emails.

60. Upon receiving these responses, Dr. Silverman took a deeper dive into company files and discovered that Defendant Keller had intentionally covered up her actions in furtherance of her wrongful solicitation of SLP clients, by falsifying notes and summaries for the practice.

61. In addition, and specifically, an email was found on Plaintiff's Simple Practice platform, but <u>not</u> in Defendant Keller's email as having been sent, from Defendant Keller in response to a client that the client could "absolutely continue to see her in NY" and that "she accepted insurance now". Attached hereto and made part hereof as Exhibit "F" is a true and correct copy of the above-referenced email.

62. Dr. Silverman confronted Defendant Keller with the email, whereupon Defendant Keller lied further in order to cover up her deceitful behavior.

63. A number of other suspicious emails were found on Plaintiff's server that were not in Defendant Keller's email, which emails led Dr. Silverman to believe that there were additional SLP clients solicited by Defendant Keller for which she unfortunately did not have direct, concrete evidence.  (see Ex "F" hereto).

64. Dr. Silverman's review of Plaintiffs' records determined that only <u>one</u> of the many prospective clients referenced hereinabove for transition had actually successfully transferred to another therapist at SLP.

65. In light of the facts set forth hereinabove, prior to Defendant Keller's official end-date under the Independent Contractor – Clinician Contractor Agreement, on July 3, 2025, Dr. Silverman authored a formal "notice of default and breach of contract" to Defendant Keller, informing her that she had violated her agreement pursuant to the contract's non-solicitation clause in Section 15.b (see Ex "A" hereto).

66. Dr. Silverman demanded therein that Defendant Keller immediately cease all solicitation activities and "take all necessary steps to cure this breach", further informing Defendant Keller that her actions were causing significant harm to Plaintiff.

67. On or about July 13, 2025, the Silvermans received a letter from Pact Legal, who purported to represent Defendant Keller in regard to the breach of the contractor agreement.

68. The attorney indicated in the letter that they would "be in touch shortly to respond substantively"; however, no follow up ever happened, and to date, Dr. Silverman has not received any additional correspondence or reply from Defendant.

69. To date, it is believed, and therefore averred, that Defendant CYC continues to conduct business with clients of Plaintiff, and continues to solicit business based on its prior and purported affiliation with Plaintiff.

70. As of the date of the filing of the instant Complaint, Defendant Keller's LinkedIn profile reflects that she is a therapist with Plaintiff.  Attached hereto and made part hereof as Exhibit "G" is a true and correct copy of Defendant Keller's current LinkedIn page.

71. As of the date of the filing of the instant Complaint, Defendant Keller's current practice information appears on various directories and websites with contradictory information as to her credentialing, whether or not she takes insurance clients, and/or which insurance companies she participates with.

72. The existence of an apparent connection between Plaintiff and Defendant Keller, and thereby CYC, is damaging to Plaintiff.

73. Should current clients or potential clients presume Defendant Keller's affiliation with SLP, it might reasonably be assumed that Plaintiff accepts insurance payment for services.

74. This assumption could, in turn, lead to complaints, audits, or even attempts at recoupment by insurance carriers, when in fact Plaintiff has no dealings with, and never has had any dealings with, insurance companies in connection with its practice.

75. Worse, current clients could reasonably form a belief upon view of this apparent connection that Plaintiff has been charging them as private pay clients while the opportunity to submit their treatment through insurance was available, which is untrue.

76. Defendant Keller, through her actions set forth hereinabove, and Defendant CYC, through its continued practice of treating Plaintiff's clients, have directly and proximately caused significant harm and enormous practice disruption for Plaintiff.

77. Further, the unfortunate circumstances that occurred when Dr. Silverman could not, in fact, refer the clients already promised to other therapists, because Defendant Keller had stolen them, made her suffer great embarrassment professionally.

78. Defendant Keller's actions were willful and intentional, and done without consideration of the July 3, 2025 letter from Plaintiff informing Defendant Keller that her actions had caused, and continued to cause, tremendous harm to Plaintiff's business.

79. As a direct and proximate result of Defendant Keller's acts and the continuing acts of Defendant CYC, Plaintiff has suffered, and will continue to suffer, irreparable harm and grave economic damage including harm to reputation, loss of revenue, business interruption, loss of business opportunities, and client confusion.

80. As a direct and proximate result of Defendant Keller's breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with business contracts, and misappropriation of trade secrets, Plaintiffs have suffered damages in an amount to be determined at trial, well in excess of the jurisdictional threshold of this court of $75,000.00.

81. As a direct and proximate result of Defendants' acts set forth hereinabove, Defendant Keller and Defendant CYC have been unjustly enriched to the detriment of Plaintiff and to the benefit of Defendants.

## COUNT I
## BREACH OF CONTRACT

82. Plaintiff incorporates by reference the averments contained in paragraphs 1 through 81 above as if fully set forth at length herein.

83. Plaintiff Silver Linings Psych LLC and Defendant Keller entered into a valid, binding and enforceable contract, which contract was the Independent Contractor – Clinician Contractor Agreement (see Ex "A").

84. Plaintiff honored its terms and performed all obligations under the contract.

85. Defendant Keller is in breach of contract with her violation of Sections 3.a of the Agreement, which requires Defendant to perform the terms of the contract "in accordance with the standards, customs and ethical principles established by the American Counseling Association, and in compliance with all applicable laws and regulations …" (see Ex "A").

86. Defendant Keller advertises contradictory insurance information and has created the appearance of an affiliation with Plaintiff when there is none. This has and will cause harm to Plaintiff, confusion for its clients, and potential future economic harm to Plaintiff.  As these acts are not in keeping with the ACA principles and with insurance regulations and laws, Defendant Keller has breached Section 3.a. of the contract between herself and Plaintiff.

87.  Defendant Keller is in violation of Section 4.a of the Agreement, which requires
Defendant to provide services at SLP's business location, or by telemedicine *if approved
in advance in writing* …" (emphasis added) (see Ex "A").

88. Defendant Keller deceptively took Plaintiff clients while still under contract with
Plaintiff, which clients she continued to see by telemedicine through her new company
(Defendant CYC) once the transition was made from Pennsylvania to New York, without
advance approval in writing or otherwise from Plaintiff.

89.  Accordingly, Defendant Keller is in breach of Section 4.a. of the contract between
Defendant Keller and Plaintiff.

90. Defendant Keller is in breach of Section 14 of the Agreement, which requires
Confidentiality with regard to business affairs and relationships of Plaintiff, which
confidential information includes client lists and prospect names/information (see Ex.
"A").

91. Because Defendant Keller systematically communicated with Plaintiff's clients and then
"took" them to her New York practice as her own, along with, inter alia, their
information, records, contact information and email addresses, and for all other reasons
as set forth hereinabove, Defendant Keller is in breach of the confidentiality clause of the
agreement.

92. Defendant Keller is in breach of Section 15.a of the Agreement, which section requires
compliance with Non-Disclosure.

93. Defendant Keller is clearly in breach of the aforementioned clause with regard to its
nondisclosure requirement, as the language of the contract explicitly states that the names
and contact information of SLP clients will remain the exclusive property of Plaintiff.

94. Defendant Keller, by signing this Agreement which included this clause, thereby *acknowledged and agreed* that those names and contact information "constitute confidential information *and are of great economic value to SLP*" (emphasis added) (see Ex. "A")

95.   The Non-Disclosure Clause explicitly provides that the "Contractor will not directly or indirectly use, divulge or disclose the names and/or contact information of SLP's clients to any person *or entity* engaged in a business that provides services similar to the Services provided by SLP" (emphasis added) (see Ex. "A").

96. When Defendant Keller brought client information and contact information into her new entity, Defendant CYC, she violated Section 15 of the contract.

97. Section 15.b. of the Agreement requires the contractor, for a period of one year after the agreement ends, to avoid directly or indirectly any solicitation or diversion of SLP clients, and to avoid providing services to clients for whom she provided services while engaged with Plaintiff.

98. The factual averments made hereinabove establish that Defendant Keller violated this clause of the Agreement and is, accordingly, in breach of contract.

99. Moreover, Defendant Keller expressly agreed in Section 15.d. of the agreement that she understood the restrictive clause, agreed that such non-solicitation restrictions were fair and reasonable, and put in place "*for the protection of SLP's legitimate competitive business interests*" (emphasis added) (see Ex. "A").

100. Despite this understanding, Defendant Keller proceeded to intentionally breach the non-solicitation clause of the Agreement when she stole Plaintiff clients, direct evidence of which has been attached to the Complaint hereto.

101. Finally, Defendant Keller has breached Section 20 of the subject Agreement when, it is believed and therefore averred, she accessed and appropriated the solicited clients' records, and Section 20 mandates that all medical and financial records pertaining to Plaintiff clients *shall at all times be the property of SLP* (emphasis added) (see Ex. "A").

102. Under Pennsylvania law, in order to prove breach of contract, defendant must show 1) the existence of a contract, including its essential terms, 2) a breach of a duty imposed by the contract and 3) resultant damages. *Gorski v. Smith*, 2002 PA Super 334, 812 A.2d 683, 692 (Pa. Super. 2002).

103. Defendant Keller has clearly breached the subject contract in light of the specific, well-pleaded facts as set forth hereinabove in Plaintiff's Complaint, all elements required for breach of contract having been met.

104. As a direct and proximate result of Defendant's breach of contract, Plaintiffs have suffered damages in an amount to be determined at trial, in excess of $75,000.00

WHEREFORE, Plaintiff Silver Linings Psych, LLC demands judgment against Defendant Colleen M. Keller for compensatory damages in excess of $75,000, pre-judgment interest, post-judgment interest, costs of suit, and such other and further relief as this Court deems just and proper.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

105. Plaintiffs incorporate by reference the averments contained in paragraphs 1 through 102 above as if fully set forth herein.

106. Pennsylvania law provides that "All contracts contain an implied covenant of good faith and fair dealing, which means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the

contract.'" *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (quoting *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988)).

107. Count I of Plaintiff's Complaint establishes that a valid and binding contract existed between Plaintiff and Defendant Keller and has factually plead such that the elements for a breach of contract claim have been established.

108. However, liability may attach to Defendant where "a party may be liable for breach of the implied covenant of good faith and fair dealing if it "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." *Id.*

109. Defendant Keller's intentional acts evaded the spirit of the contract, willfully rendered imperfect performance of that contract, and interfered with the performance of the other party to the contract, Plaintiff SLP.

110. The egregious nature of Defendant Keller's acts toward its then-employer under which she had an independent contractual agreement should allow for relief under the law beyond a breach of contract action.

111. To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith, or conduct that is arbitrary and capricious." *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013) (citing *Alden v. Georgetown Univ.,* 734 A.2d 1103, 1112 n.11 (D.C. 1999)).

112. Here, Defendant Keller exhibit conduct was both arbitrary and capricious, and done in bad faith.

113.  While Defendant Keller was free to operate independently from Plaintiff in matters that did not involve SLP business, she could not, while being under contract with SLP, perform acts that would run contrary to that contract, or frustrate its purpose.

114.  Defendant Keller, while working for Plaintiff, did not have any other therapy-related business in Pennsylvania outside that of her work with SLP.

115.  Yet, Defendant Keller – well prior to the expiration of the contract with Plaintiff – signed on to insurance panels.

116.  As stated hereinabove, Plaintiff was never a member of insurance panels and does not take health insurance as payment from clients, nor does it have a need to report any such payment information for regulatory or statutory purposes, such as might be the case with a practice subject to those panels.

117.  Defendant's act in joining these panels when she did can only reasonably be explained as one that was done in bad faith, given the facts set forth hereinabove.

118.  Accordingly, her actions went beyond a breach of contractual terms, and a claim for breach of implied covenant of good faith and fair dealing must lie due to her egregious and intentional acts.

119.  While the act of procurement of insurance company business was not expressly prohibited in the contract, it certainly "frustrated the intent of the parties and violated the implied duty of the parties to act according to reason and justice." *Frickert v. Deiter Bros. Fuel Co., Inc*., 464 Pa. 596, 347 A.2d 701 (1975).

120.  Plaintiff and Defendant Keller were bound by an active contract at the time Defendant Keller procured insurance company panels.

121.  Defendant Keller was therefore required to "refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract". *Frickert*, supra, 464 Pa. 596 at 603 (1975).

122.  An appearance was created by Defendant Keller, and furthered by Defendant CYC in its continued operations, that Plaintiff and Defendant are intertwined, and thus inference can be made that Plaintiff accepts insurance through the panels joined by Defendant Keller.

123.  This appearance causes significant confusion to SLP clients, and subjects Plaintiff to audits, potential complaints, confusion of clients, and significant potential loss of revenue.

124.  For the reasons set forth hereinabove, it is submitted that Defendant Keller's wanton and reckless disregard for Plaintiff establishes her breach of the implied covenant of good faith and fair dealing she owed to Plaintiff under the contract.

125.  As a direct and proximate result of this breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be determined at trial, in excess of $75,000.00.

WHEREFORE, Plaintiff Silver Linings Psych, LLC demands judgment against Defendant Colleen M. Keller for compensatory damages in excess of $75,000, pre-judgment interest, post-judgment interest, costs of suit, punitive damages, and such other and further relief as this Court deems just and proper.

## COUNT III
## TORTIOUS INTERFERENCE WITH
## BUSINESS CONTRACTS / BUSINESS RELATIONSHIPS

126. Plaintiff incorporates by reference the averments contained in paragraphs 1-123 above as if fully set forth at length herein.

127. The therapist-client relationship is considered a contractual one by nature, and certainly a business relationship.

128. The names and confidential information of clients are part of the business goodwill upon which Defendant SLP, through Alissa Silverman, Psy.D, built her business.

129. Interference with the above-referenced relationships causes direct harm to Plaintiff, as the interfering acts performed by Defendant Keller result in severe economic damage.

130. In order to establish a claim for tortious interference with contract and/or business relations, the Plaintiff LLC must prove: (1) the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct. *Synthes, Inc. v. Emerge Med., Inc.,* 25 F. Supp. 3d 617, 727 (E.D. Pa. 2014).

131. Plaintiff has set forth facts with specificity hereinabove sufficient to satisfy all elements for a claim of tortious interference against Defendant Keller.

132. Because Defendant Keller has intentionally brought the SLP clients into her new business entity, Choosing Yourself Counseling, LLC, the claim also lies against Defendant CYC.

133. Defendant Keller's behavior, and the subsequent continued operation of Defendant CYC with clients and information that rightfully belonged to Plaintiff, was outrageous, willful, and done with reckless disregard to the rights of Plaintiff.

134. Plaintiff, in the instant pleading of facts with specificity as set forth hereinabove, has met all elements for a claim of tortious interference with business contracts and/or business relationships.

135. As a direct and proximate result of Defendant's tortious interference with business contracts and/or business relationships, Plaintiffs have suffered damages in an amount to be determined at trial, in excess of $75,000.00

    **WHEREFORE**, Plaintiff, Silver Linings Psych, LLC demands judgment against Defendant Colleen M. Keller and Defendant Choosing Yourself Counseling LLC, for compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, costs of suit, and such other and further relief as this Court deems just and proper.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS and VIOLATION OF THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT

136. Plaintiff incorporates by reference the averments contained in paragraphs 1 through 133 above as if fully set forth herein.

137. Defendant Keller, and Defendant CYC through its day-to-day operations and its continuation of Defendant Keller's acts, have taken knowledge and information known to it only through its employment as an independent contractor at SLP, and appropriated that knowledge and information as its own.

138. Plaintiff never gave consent, express or implied, to Defendant Keller that she could take any of the practice tools, process(es), client information, client lists, customer base, or any other element of SLP's practice and assume it as her own.

139. However, Defendant Keller did just that, and continues to operate her business in another state, connecting on a regular basis with Pennsylvania clients of SLP that were stolen, and putting into practice what she learned and had access to while physically at SLP.

140. In order to state a claim for a violation of Pennsylvania's Uniform Trade Secrets Act, it must be shown that the disclosure of, or use of, a trade secret of another was done without implied or express consent and was … acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use". 12 Pa. C.S. §5302.

141. The Pennsylvania Superior Court has found that where practice documents were taken by a doctor in order to start a competing practice, and misleading solicitations were sent to former customers, and confidential information was taken into the new practice, a claim for misappropriation of trade secrets was established.  See, *Eye Center of Central Pa. v. Fassero*, 240 A.3d 904) Pa. Super Ct. 2020).

142. Plaintiff has plead with specificity facts hereinabove that establish a claim for misappropriation of trade secrets, and for violation of the Pennsylvania Uniform Trade Secrets Act.

WHEREFORE, Plaintiff, Silver Linings Psych, LLC demands judgment against Defendant Colleen M. Keller and against Defendant Choosing Yourself Counseling LLC, for compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, costs of suit, and such other and further relief as this Court deems just and proper.

## <u>COUNT V</u>
## <u>UNJUST ENRICHMENT</u>

143. Plaintiff incorporates by reference the averments contained in paragraphs 1 through 140 above as if fully set forth herein.

144. Defendant Keller has directly solicited and taken clients of Plaintiff for her financial gain, and for the growth and financial gain of her business, Choosing Yourself Counseling, LLC.

145. A claim for unjust enrichment requires a showing of (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant, and (3) acceptance and retention of the benefits in a context that would make it inequitable for the defendant to retain the benefits without paying fair value. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999).

146. The benefits derived by Defendants in the continued relationship with these clients are to Plaintiff's detriment and have caused and continue to cause grave economic damage to Plaintiff, with direct loss of revenue to Plaintiff as well as loss of potential future revenue, at the hand of Defendants.

147. Plaintiff has provided direct evidence of Defendant Keller's solicitation of clients, as attached in Exhibits "E"and "F" hereto.

148. Defendants Keller and CYC have been unjustly enriched by their acts, to the detriment of Plaintiff.

149. As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs have suffered damages in an amount to be determined at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff, Silver Linings Psych, LLC demands judgment against Defendant Colleen M. Keller and against Defendant Choosing Yourself Counseling LLC, for compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, costs of suit, and such other and further relief as this Court deems just and proper.

Respectfully submitted,

FREUNDLICH & LITTMAN, LLC.

BY:

November 25, 2025

Megan D. Hazel (ID #84047)
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
(215) 545-8500

**<u>VERIFICATION</u>**

I, Alissa Silverman, hereby verify that the statements made in the foregoing Civil

Complaint are true and correct to the best of my knowledge, information and belief.  I am aware

that false statements of fact made knowingly are subject to penalties of 18 Pa. C.S.A. §4904

relating to unsworn falsification to authorities

*Alissa Erin Silverman*
_____
Alissa Silverman